UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RANDY LOVELADY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11-CV-1922-NAB |
| | ) |
| CAROLYN W. COLVIN[1], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Randy Lovelady's ("Lovelady") application for disability insurance benefits under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Lovelady alleges disability due to discogenic and degenerative disorders of the back, coronary artery disease ("CAD"), and asthma. [Doc. 1]. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 7].

**I.   Procedural History**

On August 28, 2007, Lovelady completed his applications for disability insurance benefits and SSI. (Tr. 55-58, 213-217.) The Social Security Administration ("SSA") denied Lovelady's claim and he timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 184-189.) The SSA granted Lovelady's request and a hearing was held on

---

[1] At the time this case was filed, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Carolyn W. Colvin for Michael J. Astrue in this matter.

December 30, 2008. (Tr. 166-170, 710-762.) The ALJ issued a decision upholding the denial of benefits on January 14, 2009. (Tr. 26-36.) Lovelady requested review of the ALJ's decision by the Appeals Council (Tr. 136.) On May 21, 2010, the Appeals Council granted his request and remanded the case for further proceedings before the ALJ. (Tr. 69-72.) The ALJ held a supplemental hearing on September 21, 2010, and again issued a decision denying benefits to Lovelady. (Tr. 10-18, 670-709.) Lovelady requested review of the ALJ's second decision and the Appeals Council denied his request for review. (Tr. 3-6.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Lovelady filed this appeal on November 4, 2011. [Doc. 1.] The Commissioner filed an Answer. [Doc. 11] Lovelady filed a Brief in Support of the Complaint. [Doc. 17.] The Commissioner filed a Brief in Support of the Answer. [Doc. 20.]

The Court has reviewed the parties' briefs, the decision of the ALJ, the transcript of the hearing, and the additional medical and documentary evidence in the record. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a),

416.920(a). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence. 42 U.S.C.A. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). Therefore, even if this court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

1. The findings of credibility made by the ALJ;
2. The education, background, work history, and age of the claimant;

3

    3.    The medical evidence given by the claimant's treating physicians';

    4.    The subjective complaints of pain and description of the claimant's physical activity and impairment;

    5.    The corroboration by third parties of the claimant's physical impairment;

    6.    The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

    7.    The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## III.   Decision of the ALJ

The ALJ determined that Lovelady met the insured status requirements of the SSA on September 4, 2001, but was no longer insured after December 31, 2006 and therefore must show disability on or before December 31, 2006 for disability insurance benefits. (Tr. 12.) He found that Lovelady has not engaged in substantial gainful activity since September 4, 2001. *Id.* The ALJ determined that Lovelady had the severe impairments of discogenic and degenerative disorders of the back, coronary artery disease, and asthma, however, Lovelady's condition does not meet or medically equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13.) Next, the ALJ also determined that Lovelady had the residual functional capacity ("RFC") to perform a limited range of light work and a wide range of sedentary work. (Tr. 14.) The performance of light work would be limited to lifting twenty pounds occasionally and ten pounds frequently; working with a sit/stand option, occasionally balancing, stooping, crouching, kneeling, crawling, and climbing stairs or ramp; never crawling; never climbing ladders, ropes, or scaffolds; and avoiding concentrated exposure to extreme cold and heat, wetness, fumes, odors, dust, gases, vibration, hazardous heights, and hazardous machinery. (Tr. 14.) Then, the

4

ALJ found that Lovelady is unable to perform his past relevant work, but he has transferrable work skills and there are a significant number of jobs that he can perform in the national economy.  (Tr. 17.)  Finally, the ALJ concluded that Lovelady has not been disabled under the SSA.  (Tr. 17-18.)

**IV.    Discussion**

Lovelady alleges two errors on review.  First, Lovelady asserts that the ALJ failed to give controlling weight to the opinion of Lovelady's treating physician and failed to properly evaluate the opinion of the medical expert.  Second, Lovelady contends the ALJ failed to properly consider Lovelady's credibility.

Dr. Eric Sollars has treated Lovelady since 2003 for lumbar sacral spine radiculopathy, failed back syndrome, chronic obstructive pulmonary disease ("COPD"), and CAD.  (Tr. 496.)  On December 9, 2008, Dr. Sollars completed a Physical RFC Questionnaire regarding Lovelady.  (Tr. 496-500.)  In the Physical RFC Questionnaire, Dr. Sollars diagnosed Lovelady with lumbar sacral spine radiculopathy, failed back syndrome, COPD, and CAD.  (Tr. 496.)  He determined that Lovelady was incapable of even "low stress" jobs.  (Tr. 497.)  He found that Lovelady's pain and other symptoms were severe enough to frequently interfere with the attention and concentration needed to perform even simple work tasks.  (Tr. 497.)  Dr. Sollars also found that Lovelady could sit for forty-five minutes and stand for 10 minutes at a time and stand or walk less than two hours and sit about four hours in an eight hour work day.  (Tr. 497.)  Dr. Sollars determined that Lovelady would need to walk around every five minutes for five minutes at a time and take eight unscheduled breaks for twenty minutes before returning to work.  (Tr. 498.)  He also determined that Lovelady needs to use an assistive device while walking or standing.  *Id.*

5

Dr. Sollars opined that Lovelady could rarely lift and carry less than ten pounds and never lift or carry over ten pounds in a competitive work situation. (Tr. 498.) He also stated that Lovelady could rarely twist, stoop, crouch, or climb stairs and never climb ladders. (Tr. 499.) Dr. Sollars opined that Lovelady was likely to be absent from work more than four days per month (Tr. 499.) The ALJ stated that the opinions in the Physical RFC Questionnaire completed by Dr. Sollars were "largely given slight weight, not only because they are inconsistent with the record as a whole, but because they are not supported by the doctor's [own] exam results." (Tr. 16.)

The ALJ gave considerable weight to the opinion of Dr. Morris Alex, a non-examining medical expert. (Tr. 14.) Dr. Alex testified that objectively Lovelady is capable of light work and probably sedentary work, but if Lovelady's subjective pain is considered, he would question that capability. (Tr. 697.) Dr. Alex noted that there are no positive neurological findings of the cause of Lovelady's back pain, however, he believes that Lovelady's doctors' opinion that Lovelady may have scar tissue that is causing him pain not detectable by objective neurological findings is a rational decision. (Tr. 696, 698-99.) Dr. Alex and Lovelady testified that Medicaid has repeatedly denied requests to have a CAT scan performed to determine if Lovelady does indeed have scar tissue. Further, Dr. Alex opined that if scar tissue were found, Lovelady's subjective pain complaints would become objective. (Tr. 699.) Dr. Alex also opined that Lovelady should avoid excessive heat, and cold, high humidity, and noxious fumes of all kinds, but he was unable to determine limitations regarding walking, standing, and sitting. (Tr. 697-98.) Dr. Alex agreed that the side effects of medication described by Lovelady were common side effects and that smoking would not have an effect on Lovelady's condition if it were caused by scar tissue. (Tr. 700.)

6

In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. § 404.1527(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Social Security regulations define a treating source as "[the claimant's] physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2)[2]; SSR 96-2p. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000); *see also* § 404.1527(c)(2); SSR 96-2p. The regulations require that the following factors be considered when evaluating medical opinion evidence: (1) whether source examined claimant, (2) existence of treatment relationship, (3) length of treatment relationship and frequency of examination, (4) nature and extent of treatment relationship, (5) relevant evidence supporting opinion, (6) consistency with record as a

---

[2] At the time of the ALJ's decision, the content of the cited regulation was codified at 20 C.F.R. §§ 404.1527(d)(2).

whole, (7) specialization, and (8) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

The Court finds that the ALJ's analysis of the opinion evidence is not supported by substantial evidence. First, the ALJ gave Dr. Alex's opinion considerable weight. The ALJ relied upon Dr. Alex's testimony to determine Lovelady's RFC. Dr. Alex did not examine Lovelady and based his opinion on Lovelady's medical records and testimony at the administrative hearing. "The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2003). Next, Dr. Alex's testimony regarding Lovelady's RFC is much less definitive than it is portrayed in the ALJ's decision. Dr. Alex specifically testified that considering Lovelady's subjective complaints of pain, he would question the ability to perform light work. (Tr. 697.) Dr. Alex also agreed that if the existence of scar tissue was confirmed, there would be objective evidence for Lovelady's complaints of pain. (Tr. 699.) Finally, because the ALJ gave Dr. Sollars' opinion light weight and Dr. Alex gave a less than definitive RFC determination, substantial evidence does not exist regarding whether Lovelady has the functional ability to perform work related activities.

It is true that "[a] disability claimant has the burden to establish her RFC." *Masterson v. Barnhart*, 363 F.3d 731, 737-38 (8th Cir. 2004). However, the ALJ has an independent duty to develop the record despite the claimant's burden. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). "Some medical evidence must support the determination of the claimant's RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Id.* (quoting *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2003)).

It is not clear to the Court why a consultative examination to determine the presence of scar tissue was not ordered. In some cases, the duty to develop the record requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. § 404.1519a(b). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). Therefore, "[a]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

In this case, the Court finds that the ALJ had a duty to further develop the record to obtain medical evidence to assist in the determination of the RFC in this matter. It is clear from Dr. Alex's testimony that the presence of scar tissue would affect Dr. Alex's testimony about Lovelady's functional limitations. The Court also finds that it would affect the ALJ's credibility determination that Lovelady "lacks credibility." (Tr. 16.)

**V.   Conclusion**

Based on the foregoing, the Court finds that the Commissioner's decision should reversed and remanded for a consultative examination and medical tests to determine whether scar tissue is present.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Lovelady seeks in his Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 17]

9

**IT IS FURTHER ORDERED** that this action is **REVERSED** and **REMANDED** to the Commissioner for consultative examination and a new determination consistent with this opinion.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Carolyn W. Colvin for Michael J. Astrue in the court record of this case.

Dated this 25th day of September, 2013.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE